31 C.C.P.A. (Patents)

**C. B. SHANE CORPORATION v. DESMOND'S.**

**Patent Appeal No. 4798.**

Court of Customs and Patent Appeals.

Dec. 7, 1943.

Ephraim Banning, of Chicago, Ill., for appellant.

A. W. Murray, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in a trade-mark opposition proceeding wherein the Commissioner of Patents, reversing a decision of the Examiner of Interferences, held that the notice of opposition of appellant should be dismissed and that appellee was entitled to the registration applied for.

The involved marks are appellant's mark "Season Skipper," applied to overcoats and topcoats, and "Desmond's Seasonaire," applied to clothing of various kinds, including overcoats.

Appellant's mark was registered in the United States Patent Office on February 13, 1940, No. 375,283, upon an application filed September 21, 1939. Appellee filed the application for the registration of its mark on July 15, 1940. The word "Desmond's" was disclaimed apart from the mark shown in the drawing.

Appellant filed its notice of opposition to the registration of appellee's mark on November 13, 1940, alleging ownership of the registered mark above referred to, that the marks of the parties are confusingly similar, and prior use of its mark.

The answer of appellee denied all of the allegations of appellant's notice of opposition, and for further answer alleged in part as follows: "And for further answer, applicant says that its trade mark 'Seasonaire' is so substantially different in appearance, in spelling, in sound and in significance or meaning from the mark 'Season Skipper' claimed by opposer, that they can and are used *onestly* and concurrently in trade without any reasonable likelihood of confusion. The word 'Aire' is the predominant part of applicant's mark

and the word 'Skipper' is the predominant part of opposer's mark. * * *"

Both parties took testimony.

The Examiner of Interferences held that the goods of the parties are in part identical, and all possess the same descriptive properties; that the marks of the parties are confusingly similar; that appellant is entitled to September 21, 1939, for first use of its mark, that being the date of its application for registration as aforesaid; and that appellee had not established use of its mark prior to said last named date.

The Examiner of Interferences in his decision stated as follows:

"The goods of the parties are, in part, identical and are deemed clearly to possess the same descriptive properties.

"With regard to the marks, applicant contends that the disclaimed name 'Desmond's' associated with the notation 'Seasonaire' is the dominant feature. That the notation 'Seasonaire' alone is capable of denoting origin and would be primarily relied upon by many purchasers for this purpose is believed evidenced by the advertisements introduced in evidence by the applicant (Exhibits 6a, 6b, 6c, 7) in which the notation is separately displayed and also in the fact that the woven labels for 'Seasonaire' are separate from those bearing the applicant's name (Exhibit 5). California Prune & Apricot Growers Association, Inc., v. Dobry [Flour] Mills, 101 F. 2d 838 [26 C.C.P.A., Patents, 910] 40 [U.S.] P.Q. 616.

"The dominant feature of the mark sought to be registered and that relied upon by the opposer each commence with the term 'Season'. Considering the marks as a whole it is believed that their resemblances, particularly in sound, predominate over their differences at least to an extent that there is reasonable doubt, on the question of likelihood of confusion in trade."

Opon a motion by appellee for reconsideration, the Examiner of Interferences adhered to his original decision and further stated: "A further consideration of the record discloses that Registration No. 337,140, a copy of which is found in the record (paper No. 11), issued in the name of the opposer and discloses a mark having as the dominant feature thereof the notation 'Season Skipper,' the same as that here relied upon, for use in connection with 'men's overcoats and topcoats.' This registration issued prior to the earliest date established by the applicant and is deemed to be a statutory bar to issuance of a registration upon the application involved herein."

Upon appeal the commissioner was of the opinion that the marks of the parties are not confusingly similar, and therefore reversed the decision of the Examiner of Interferences.

In his decision the commissioner said:

"It is my opinion, however, that the opposition should have been dismissed because of the dissimilarity of the marks.
* * * * *
"Applicant, however, is not seeking to register the word 'Seasonaire' alone. The mark of the application is 'Desmond's Seasonaire,' and for the purpose of this proceeding it must be presumed that applicant will use the mark as registered. Lucien Lelong, Inc., v. Elgin American Manufacturing Co., 83 F.2d 690, 23 C.C. P.A. [Patents] 1139. And though the word 'Desmond's' is disclaimed, it is nevertheless a part of applicant's mark, and must be considered in determining the question of confusing similarity between the marks as a whole."

It is our opinion that the dominant part of appellee's mark is the notation "Seasonaire" and that the commissioner did not sufficiently consider evidence introduced by appellee in that regard.

Appellee's principal business is in the city of Los Angeles, California, and vicinity. It also makes sales of its goods in adjacent states. It advertised its goods extensively in the Los Angeles newspapers.

Appellee introduced in evidence as Exhibit 6a, an advertisement appearing in the April 27, 1939, issue of the Los Angeles Examiner. At the head of this advertisement there appears the following: " *Seasonaire Another Desmond Discovery for Southern California." The star before the notation indicates a footnote at the bottom of the advertisement, which reads as follows: "A trade-mark name registered exclusively by Desmond's." Nowhere in this advertisement is the notation "Seasonaire" connected with the word "Desmond's" but appellee's customers were informed that appellee's mark was "Seasonaire."

In the issue of the Los Angeles Examiner of May 2, 1940, appears another

504

advertisement introduced in evidence as Appellee's Exhibit 6c. This advertisement is also headed by the notation "Seasonaire," and the only mention of "Desmond's" appears at the bottom of the advertisement, as follows: "Let's go to Desmond's."

In another advertisement in the same paper of July 4, 1940, Appellee's Exhibit B, the notation "Seasonaire" appears in describing a particular suit of clothes, but the only reference to the word "Desmond's" is at the bottom of the advertisement, reading: "Let's go to Desmond's."

From these advertisements it is clear that the public was not informed that the word of "Desmond's" was a part of appellee's mark. On the contrary, appellee's customers were led to believe therefrom that appellee's mark was "Seasonaire," standing alone.

The foregoing is in harmony with the answer of appellee to appellant's notice of opposition wherein, as hereinbefore noted, appellee alleged that its trade-mark is "Seasonaire," and that "The word 'Aire' is the predominant part of applicant's mark." Another important circumstance to be considered is that separate woven labels were attached to appellee's goods, one consisting of the notation "Seasonaire," alone, and the other consisting of the words "Desmond's Southern California."

We would also observe that one of the labels filed by appellee with its application consists of the notation "Seasonaire" standing alone.

■ In view of the foregoing, it is our opinion that the commissioner placed undue weight upon the word "Desmond's" in the mark as applied for, because clearly appellee, by its own conduct, had made the notation "Seasonaire," the dominant part of its mark. The commissioner, in his decision as hereinbefore quoted, held that it must be presumed that appellee will use the mark as registered. This is true in the absence of testimony to the contrary but, even so, for the reasons aforesaid, the dominant part of appellee's mark is "Seasonaire," a fact which the commissioner apparently overlooked.

The Examiner of Interferences, in arriving at his decision, cited our decision in the case of California Prune & Apricot Growers Ass'n v. Dobry Flour Mills, Inc., 101 F.2d 838, 840, 26 C.C.P.A., Patents, 910. In that case the appellee registered the mark "Dobry's Sunsweet," for wheat flour. The appellant filed a petition for cancellation alleging prior use of the mark "Sunsweet" applied to fresh, dried, and canned fruits. The commissioner, reversing a decision of the Examiner of Interferences, had held that the petition for cancellation should be dismissed. In reversing his decision we said: "We have no hesitation in holding that the marks of the parties are confusingly similar, and that appellant has been damaged by the registration of appellee's mark. To hold otherwise would make it possible for one to appropriate a trade-mark which, through extensive advertising, had become a household word, by adding thereto the name of an individual. Many others might do likewise and the value of the trade-mark to the first adopter and user might be largely destroyed."

Appellee, in the case at bar, cited our decision in the case of Tetley & Co., Inc., v. Bay State Fishing Co., 82 F.2d 299, 23 C.C.P.A., Patents, 969, to the point that appellee's mark must be considered as a whole, and it contends that when so considered there is no confusing similarity between its and appellant's mark.

We considered the case last above cited in the California Prune & Apricot Growers Association case, supra, [101 F.2d 838, 839] and in our decision stated:

"The commissioner relied largely upon our decision in the case of Tetley & Co., Inc. v. Bay State Fishing Co., 82 F.2d 299, 23 C.C.P.A., Patents, 969, wherein it was held that the marks 'Budget Special,' applied to fish, and 'Tetley Budget Tea,' applied to tea, the words 'Special' and 'Tea' being disclaimed, were not confusingly similar. The commissioner quoted from our opinion wherein we said: 'In considering the mark of the opposer, the name "Tetley" is to be given as much force and effect as any other part of the mark.' We think that, properly construed, this expression does not imply that every word in a mark is to be given the same force and effect as any other part of the mark. It is well established that one word or feature of a mark may be the dominant portion thereof, and be given greater force and effect than other parts of the mark in determining confusing similarity between it and another mark used upon goods of the same descriptive properties. Balti-

more Paint & Color Works v. Bennett Glass & Paint Co., 40 F.2d 1009, 17 C.C.P.A., Patents, 1269.

"There is no conflict between this rule and the equally well-established rule that, in determining the question of confusing similarity between marks, they must be considered in their entirety."

It follows from the foregoing that it is our opinion that the Examiner of Interferences was right in holding that the marks of the parties here involved are confusingly similar. It appears from the evidence that appellee's business is conducted through retail stores owned by it in the city of Los Angeles and towns in the vicinity thereof. Through its advertising it had informed its customers that its trade-mark was "Seasonaire," and that notation would be remembered by its customers, and would be regarded by them as appellee's mark. We can hardly conceive of a case where a party could, by its own conduct, more clearly have made a part of a mark the dominating portion thereof. This being true, we hold that the public would be likely to be confused in seeing attached to goods the respective marks, or hearing the oral use of the marks over the radio or in conversation.

■ One other question remains for consideration. Appellee contends that upon the record before us it must be held that appellee had used its mark "Desmond's Seasonaire" prior to any use shown by appellant of its mark. Appellant, as hereinbefore noted, alleged in its notice of opposition ownership of its mark registered on February 13, 1940, upon an application filed September 21, 1939. It also alleged use of its mark since long prior to 1939, but it introduced no evidence upon this subject; hence it is entitled to first use of its mark only from the date of its application, September 21, 1939.

Upon the question of first use by appellee of its mark, the Examiner of Interferences, in his decision, stated: "With regard to the question of priority, testimony submitted in behalf of applicant is conflicting and ambiguous in regard to the date of first use on garments sold in trade. For example, applicant's buyer stated that the mark was first used on clothing January 1, 1940 (Skinner, Q. 20), whereas its advertising manager states that the label (Exhibit 5) has been used 'continuously since March 1939' (Westmoreland, Q. 14). However, as the invoice for the woven labels bears the date January 12, 1940 and they were not used until the Spring of 1940 (Skinner, Q. 36), the testimony is deemed insufficient to establish a date of use prior to the earliest date to which the opposer is here entitled, viz., September 21, 1939, the filing date of the application which matured into the above identified registration."

It appears from the evidence that the first use by appellee of woven labels bearing the notations of "Desmond's Southern California," and "Seasonaire," respectively, was in 1940.

One of appellee's witnesses testified that these woven labels had been used since March 1939, but as it appears from the record that these labels were ordered on December 26, 1939, and were received on January 12, 1940, it seems clear that the witness was mistaken as to the date of first use of the woven labels.

There is also some evidence that a cardboard slip containing the word "Seasonaire" attached to appellee's goods was used by appellee prior to September 21, 1939. This cardboard slip was introduced in evidence as appellee's Exhibit 1. At the top of this slip appears the word "Desmond's" and also at the bottom thereof. About an inch below the word "Desmond's" found at the top of the slip appears the notation "Seasonaire," and about an inch and a half below said notation appears a description of men's clothing, below which again appears the word "Desmond's." We find nothing in this exhibit to indicate that appellee's trade-mark was "Desmond's Seasonaire," but it indicates that as advertised the mark was "Seasonaire" applied to goods sold by Desmond's.

■ Clearly appellee may not rely upon the use of the notation "Seasonaire" standing alone to establish prior use of the mark applied for, viz., "Desmond's Seasonaire."

Appellant introduced certain testimony with relation to some experimental tests which it claims should be considered as bearing upon the question of confusing similarity of the respective marks.

In view of our conclusion hereinbefore stated that the marks of the parties are confusingly similar, irrespective of said testimony, it is unnecessary for us to consider the question of its competency.

For the reasons stated, we are in agreement with the decision of the Examiner of Interferences that appellant's notice of opposition should be sustained and the decision of the commissioner is reversed.

Reversed.

BLAND, Associate Judge, concurs in the conclusion.